We have the next case up, first case for this afternoon. It's 5-18-0260. People v. Ronnie Blom. So Mr. Blom, are you ready? Thank you, Your Honor. May it please the Court. For the audit record, I'm Cooke Blum, Collinsville, and my client is Ronnie Blum. I asked him, it's Blum. This is a criminal case out of Madison County. And we asked this Court to either reverse on one count, or demand for a new trial on that count, or conceding a count. Our position is, my client did not get a fair trial. There was a defect in the trial. And the evidence says that that count was closed. Just cut right to the chase of, you've got ten minutes, let's do it. It seems to me that the question is whether removing the drain was a threat of the use of force. And depending on what you decide on that, I can't help you. I mean, that's, there's no guideposts for that. The three of you are going to have to make that cut yourselves. But if you find that there's no way that just removing the drain could be a threat of the use of force, then one of the counts should be reversed outright. If you are of the view that removing the drain was definitely a threat of the use of force, there's no other way to look at it. Well, then you revert. In most cases in life, there's the middle ground. It's frequently more appealing. And that is, maybe the question whether removing the drain was a threat of the use of force shouldn't be made by gentlemen in robes. Maybe that decision should be made by ladies and gentlemen wearing junior badges. And that's what we're saying. Isn't that already happened? It did. It did. And isn't that the question before us on the sufficiency of the evidence, which is whether or not the jury could find that that was a threat of force? Yes. And I'm inclined to think that that won't get very far in this court. That's more of a setup for the third argument. And I don't need to talk at all about the second argument, by the way. I'll stand on the brief on that, on the evidence of other offenses. But if a jury should be deciding, should be the only ones to decide, if removing the drain was a threat of the use of force, then the jury had to be properly instructed. The trial had to be free of significant defects. And it wasn't. It wasn't. The state instructed the jury as to the law and did a terrible job, way off the rails. Instructed the jury, essentially, that lack of consent was a use of force, not even a threat of use of force. That was the use of force. It's not the law. Clearly not the law. I mean, I believe that, and there's been no substantive rebuttal to it. That, in a nutshell, should be the case. This jury was improperly instructed by the state, shouldn't have been, meets all the earmarks of plain error, and this Court should reverse, remand for a new trial as to that one count. The state suggested a couple of things that this Court should take into account. Number one, what about the jury instructions? It's presumed that the Court followed the jury instructions, but the jury instructions in this case were a mess. Four jury instructions given that applied to this offense. One of those four defined force or use of force. And the Fourth District Appellate Court has criticized that instruction, but 20 years later, we still have it. The state repeated the error three times, three times, told the jury that consent was the same thing as the use of force. Again, the cases say it's not, but the cases also say that this Court should consider whether the mention was isolated or repeated. It was not isolated, it was repeated. The state also suggests that this Court should defer to the trial court's determination of propriety of the state's argument. I pointed out in the reply brief that there was no determination of propriety. The circuit court never stated that the argument was proper. The circuit court stated that it was waived, and thus left this Court holding the basket on the merits. No one made that determination. The state has suggested that the two counts are essentially the same, and I want to emphasize my remaining time that they're not. At some point during the day, the complaining witness became afraid. At some point in time, the complaining witness was threatened by the use of force, and I concede that after the first penetration, she was certainly under threat of force. But when did she become under threat of force? When did the defendant threaten her with force? Was it when she got up that morning? Was it when she got to the massage facility? Was it when she signed up? Was it when she said good morning to the defendant? Was it when he asked her to disrobe and left the room? At what point? Well, it's either got to be the first penetration, or the removal of the drape. So the second penetration is not the same. The first penetration had already occurred. That's why we have to concede that one. Again, I think it's a gray area. The question whether removing the drape is the threat of the use of force, there's no other act that could have been it until the first penetration. And I submit again that gentlemen in robes should not make that determination. It should be made by a properly instructed jury. This jury was not properly instructed, and we request a new trial on that count. Thank you. Thank you. We'll have time for a rebuttal. Mr. Miller. May it please the Court, Counsel. My name is Max Miller, and I represent the people of the state of Illinois. The defendant was convicted following a jury trial and raises three issues on appeal. He challenges the first count of criminal sexual assault, claiming that the state did not prove beyond a reasonable doubt that the use of force or the threat of use of force was present. The state presented sufficient evidence by showing that the defendant threatened the use of force, which overwhelmed his victim with fear. Under the Illinois Criminal Code, the person is guilty of criminal sexual assault when they commit an act of sexual penetration and the use of force or the threat of force. Now, the threat of force is defined as that which is threatened or reasonably believed. People v. Dembo defines force as a physical compulsion or a threat to physical compulsion. Now, there seems to be a lot of disagreement about the interpretation of the Supreme Court's opinion in People v. Haywood. And in that opinion, the defendant was much hypothetical. He's concerned about the definition of force as overly broad. And so the Supreme Court summarizes that saying that each of the hypotheticals is based on the premise that the term force is so broadly defined, the physical force involved in consensual sexual activity could be subject to prosecution. And they say they find that contention without substance. The state argues that this consensual sexual activity, the physical force associated with that, is not sufficient. However, the physical force that is associated with nonconsensual sexual activity is distinct from that. Further, the Supreme Court in Haywood said, We consider that a person of common intelligence and experience can distinguish without difficulty between sexual acts accomplished by force, as that term is in the statute, and, for example, sexual activity between consenting adults. Now, as the defendant says, there's no question here that there was not consent and there is no question on penetration. Therefore, the state argues that the only way this could have been accomplished is by force. However, if the courts don't agree with that interpretation of Haywood, the state would argue that the threat of force was present. And they would say it was present because when the defendant entered the massage room, as she just wrote, and she laid down, I'm sorry, excuse me, the victim did, the defendant entered and he began to massage, and he began massaging her legs, which kind of put her on alert because that wasn't typical. She'd had one massage with him before. She claimed that there were three brushes over her vaginal area, and that could make her nervous, but admittedly she said she did not know at that point that anything was wrong. And then the defendant removed her covering, leaving her completely exposed. At that moment, she testified that she froze and that she was afraid. Now, the trial court did its own research and cited People v. Vaughn saying that there's no standard establishing the amount of force that the state is required to prove. But if circumstances show that resistance is futile or life-endangering, or if the victim is overcome with fear, useless or foolhardy acts of resistance are not required. And the record shows that the defendant was, in fact, overcome with fear, that she was paralyzed by that fear. Therefore, the state believes that sufficient evidence was shown to show that count one was under the threat of force. The defendant next argues that the other crimes witnesses, two of them specifically, were so dissimilar that they should not have been admitted. That was abuse of trial court's discretion. Now, the trial court properly admitted them under Section 115-7.3 of the Code of Criminal Procedures, other offense witnesses. The court needed to make a determination whether the probative value outweighed the prejudicial effect. So the court looked at three factors, proximity in time to the charged offense, the degree of factual similarity, and other relevant facts and circumstances. Now, all three of these four offenses occurred within a year. The fourth one occurred within three years. So People v. Denbo says that a crime that occurred between 12 and 15 years would lessen the probative value, but three years is well underneath that mark. And the defendant conceded in his brief that the proximity in time, it was close enough. The degree of factual similarity, it's extremely high. All of these took place at massage parlors. Three of them at Massage Lux in Edwardsville, one at Massage Anybody in Glen Carpenter. They're all by the same defendant. All the victims are female. All complained of inappropriate contact with their vagina, their breasts, or buttocks. Two testified to the defendant's heavy breathing, and all testified to the same mental reaction, that paralyzing fear that they felt. So the statement maintained that these incidents are sufficiently similar and that the contrary court did not abuse its discretion. Finally, the defendant says that the state misstated the law in its closing arguments when it said that an act of sexual penetration is in its nature an act of force. Now, this is only ambiguous when you look at Haywood's holding in that an act of nonconsensual sexual penetration is in fact an act of force. That's the distinction that the state believes should be made. The three cases that are cited by the defendant interpreting Haywood deal with issues where either consent is at issue or the actual penetration is at issue, and here that is not the case. And so the state suggests that if it is nonconsensual, and if there was in fact penetration, the only way it can be accomplished is by force. So the state does not believe that they erred in their closing argument. However, if they did, they believe that the testimony of the victim, along with the other offense witnesses, that that is overwhelming, and that they show that the defendant was in a position of power and authority over his victims. He controlled the circumstances of that room. He controlled the massage. In one of the cases, a woman told him the areas that she wanted massages. He disregarded her request, and he continued to touch her on her butt, even though she specifically asked him not to. He removed the drape without consent. So the intimidation is that fear is overwhelming them in the same way of the threat of physical force. However, we do believe that, reading Heywood in light of his actual interpretation, that there is a difference between consensual and nonconsensual sexual penetration, that there was physical force based off that. Anything else? Do you have anything to say about checking out? What's that? When she checked out, do you have anything to say about that? I saw something in the brief about that. Just that when she checked out, the defendant mentioned that she checked out normally and that she tipped, and the state would just respond. Where did she tip? She tipped the defendant. Did she hand it to the defendant directly? No. He was present when they were checking out, but he didn't handle the transactions that way. And as I said, he walked her out. He was not present when all of the defendants paid. It was separate with each one. But the state would just point out that since they didn't say anything during the actual massage, they were in this state of shock and fear, and they were just trying to get out of there as quick as they could. And as the record will reflect, all of them testified that they were very afraid and they just didn't want things to get worse. And they can't really explain why they didn't move, but when we look at it, we can see that that's a natural response. And if there are no other questions, the statement of questions is confirmed. Thank you. Mr. Blood? Thank you, Your Honor. Just to answer the questions, Justice Welch, she was checked out at a hospital by a nurse trained on the subject, and the nurse agreed that after the attempt, all she had to go by was that something else had happened. I mean, checked out at the massage bar. Paid the bill or whatever. Oh, oh, oh, yes. She paid by, I'm pretty sure it was credit card, left a tip on the credit card. Did not pay her directly. I'm surprised to be hearing at this late hour again that the state's argument was not a defect in this trial. The state misstated the law. The state twice stated the same words in closing argument, an act of sexual penetration is in its nature an act of force. Word for word, the state said that twice. Now let's go to our Supreme Court in Hagel. In Hagel, our Supreme Court tied the lack of force to consent, rejecting the proposition that, quote, force must be construed to mean simply any force, i.e., simply the physical act involved in the act of sexual penetration, whether with consent or not, end of quote. So our Supreme Court said lack of consent does not mean force. Not in that many words. However, two districts of the appellate court have said it in just about that many words, the quote being, word for word, a condition of criminal sexual assault cannot be sustained by establishing merely that the victim did not consent. Cannot. That's our crime here. Cannot be sustained by merely establishing that the victim did not consent. It's been held three times, in two cases, by the first district, by the second district. That's on page three of my report page. That's Mopala, Misaka, Alexander, and Parker, of all of them. And our Supreme Court said the same thing in February, but these courts are relying on our Supreme Court in Hagel. So, when the state argued, an act of sexual penetration in and of itself is an act of force, and, to even better them, that is the definition of force I anticipate you will receive, no more or less, an unexpected, unwanted, unrequested act. An act of sexual penetration is, in its nature, an act of force. That's not the law. You heard it in Hagel. You heard it from Mopala, Misaka, from Alexander, from Parker. That's not law. Now, the state, that's a defect. It's not really a plain error rule. It's a plain error or a defect rule. You can't blame the judge. There was no objection. It's a defect. This is a plain defect in this trial. The state went off the rails, way off the rails. And the question is, is this a closed case? And I'm not going to go back into that. I think the court understands my argument on why it was, and we've briefed it. If there's any question, we ask this court to either reverse outright or reverse and remand for a new trial as to one count. Thank you. Thank you. Thank you both. The court will take a final amendment. Five minutes to issue a ruling in due course.